ELLIS, Judge.
This is a suit by plaintiff, The North Baton Rouge Publishing Company, Inc., against The Lafayette Advertiser-Gazette, Inc., for the recovery of $1050 which, was paid by plaintiff to defendant in connection with alleged negotiations for the purchase of a Potter Rotary Press. Plaintiff’s cause of action is based upon the proposition that although negotiations were entered into between it and defendant for the purchase of the press from the latter there was no definite contract to purchase agreed upon because of certain errors of understanding between them, as to whether the purchaser or seller was to dismantle the press, and, also, as to whether the chases used in connection with this press were included in the agreement, whereas the defendant contends that there was a definite contract and that the amount deposited was earnest money and, therefore, under the terms of Article 2463 of the Civil Code, it has been forfeited and plaintiffs are not entitled to its return.
It is, therefore, only necessary to decide whether there was a definite contract, which is a question of fact. The trial court held that there was no contract' due to misunderstanding, and, therefore, no meeting of minds between the plaintiff and defendant, and rendered judgment in favor of the plaintiff, from which the defendant has appealed.
It is shown that defendant was purchasing new equipment and moving to a new location in the City of Lafayette and offered this press for sale, and the plaintiff company, being in the market for such a press, sent its president and a member of the Board of Directors to Lafayette on June 10, 1949, and they discussed with the manager of the defendant company the purchase of the press. During the discussions on that date, the manager of the defendant company offered to sell to plaintiff for the price of $11,500 the Potter Rotary Press 'and all equipment necessary for plaintiff to undertake a stereotype operation except a mat roller, and that if the contract was completed by the following day, defendant would have the press dismantled and bear such cost.
The next day, June 11, 1949, at 11:07 A. M. the «plaintiff sent the following telegram to the defendant: “Herewith $500.00. Directors offer $9,000.00. Half Cash, Balance in ten years. Includes everything needed except mat roller.”
Upon receipt of this telegram, the manager of the defendant company phoned the president of the plaintiff company in Baton Rouge and told him that $10,500 was his lowest price. On the same day and after the telephone call, the plaintiff company sent the following telegram to the manager of the defendant company: “Accept your offer of $10,500.00. Everything previously agreed included. Send pit blue print.”
On Monday, June 13, 1949, the plaintiff wrote the following letter to the defendant company:
“You made the statement to Mr. Cohn and me that if we agreed by Saturday you would throw in the dismantling. I am sure you still intend to include that.
“Our mutual understanding is that everything needed for the stereotype operation is included except a mat roller, which I am in the process of buying now.”
On June 15, 1949 the manager of the defendant company called plaintiff 'about the balance of the down -payment, whereupon the plaintiff sent its check for $550 which made the total down payment, the sum of $1,050 or 10% of the sale price, and on this check plaintiff wrote the following: “Balance of Down Payment of $1050.00 on Complete Stereotype Press and equipment Except Mat Roller.”
At this date, the defendant company had evidently not received plaintiff’s letter of June 13, and, therefore, no mention was made of the .cost of dismantling, however, on June 16, 1949 the defendant company wrote to the plaintiff company the following letter: “I note you mentioned the. cost of machinist to dismantle the press. You wiill recall that this offer was predicated on the $11,500.00 price which I quoted. Inasmuch as I have received a $10,500.00 ‘bottom’ from the president of this corporation, I am afraid that we will be unable to pay the cost of dismantling the press.”
*450 No further communications were had between the plaintiff and' defendant until June 28th, 1949 at which time defendant’s letter of June 18th was presented to the Board ojfl Directors o>f the plaintiff company, and during the meeting the manager of the defendant company called, the president and editor of the plaintiff company and asked if the plaintiff wanted to purchase the chases that were being used with the press, and the representative of the plaintiff company at that time told the defendant’s, manager that the chases were a part of the equipment which they had agreed to purchase with the press and which the defendant had agreed to include. The defendant’s manager stated that they were not included in the transaction but that he would sell the twelve chases' for $35 each.
The Board of Directors of the plaintiff company, when advised of the dispute over the cost of dismantling and the chases, on June 28th phoned to discontinue negotiations and requested a refund of the $1,050. The following day a letter to this effect was written to the defendant.
On July 1st, 1949 the defendant wrote a letter to plaintiff in which he still contended that he had not agreed to dismantling cost and that the chases were composing room and not stereotype equipment and were, therefore, not included in the transaction, and further stated that the deposit would be retained if plaintiff refused to go through with the transaction.
On July 6th, plaintiff refused to reopen negotiations and demanded its money.
There is no need to quote any further testimony or to go into the arguments of counsel in their briefs, for it is clear that there was a misunderstanding and no' meeting of minds so as to constitute a definite contract. The judge of the district court has concisely and accurately summed up the case in his oral reasons dictated to the court stenographer as follows:
“The evidence in this case. is very conflicting in that the plaintiff’s testimony sets out what the understanding was insofar as the plaintiff was concerned and the testimony of the defendant is in direct opposition to bis testimony.”
“The Court is impressed with the fact that this conflict between the testimony of the plaintiff and .defendant is due entirely and solely to the honest and sincere conflict of the position taken by each of the parties, and in view of this testimony which the court believes to be the truth insofar as each of the parties is concerned fortifies the position of the Court in holding that there was not a sufficient meeting of; the mind -to constitute a contract, and, therefore, renders judgment in favor of the plaintiff as prayed for.”
For these reasons the judgment of the District Court is affirmed.